## THE STATE v. BATEMAN, Appellant.

### Division Two, July 3, 1906.

1. **RAPE: Sufficiency of Evidence.** Evidence *held* sufficient to justify a conviction of rape.

2. ————: **Admitted: Evidence: Medical Proof.** Where prosecutrix testifies unequivocally to the rape committed upon her, and defendant admits that he had connection with her at the time and place charged, but swears that it was with her consent, no medical proof of the perpetration of the rape is necessary.

3. ————: **Complaint of Common Assault: Evidence: Variance.** The justice of the peace testified that prosecutrix came to his office and told him she wanted to make complaint against defendant; that there were two other men in his office at the time, and that prosecutrix seemed embarrassed and did not tell him the real character of the assault, but said, "He bit me and bruised me;" that thereupon, supposing it was merely a case of common assault, he wrote a complaint to that effect, which prosecutrix signed and swore to; and that, afterwards, on learning the nature of the assault, he went to see the prosecutrix, who gave him the details of the outrage, and he then prepared another complaint charging defendant with rape. *Held*, that, under the circumstances, the most that can be said of the variance between the affidavit of the prosecutrix and her testimony at the trial is that it went to her credit as a witness, nothing more.

4. ————: **Relating Particulars: Withdrawing Evidence: Non-Prejudicial Error.** The particulars of the crime of rape, as related by the prosecutrix at the time of or after making complaint, are not admissible in evidence except when drawn out from the prosecutrix upon cross-examination, or introduced as confirmatory of her testimony after evidence has been introduced tending to impeach her; and the subsequent withdrawal of such evidence from the consideration of the jury does not cure the error if the evidence was of such a character as to prejudice the defendant's case. But the admission of such evidence is non-prejudicial error where defendant testifies that he had connection with the prosecutrix at the time and place as testified to by her.

5. **PRACTICE: Leading Questions.** The asking of leading questions is a matter which rests almost entirely in the discretion

State v. Bateman.

of the trial court, and a judgment will not be reversed upon that ground unless it appears that such discretion has been unwisely exercised.

6. ———: Evidence: Objection: No Motion to Strike out. Where defendant objects to the answer of a witness on the ground that it is not responsive to the question, and, the objection being overruled, he makes no motion to strike out the answer, he will be held to have waived his right to have it excluded.

7. RAPE: Statements of Prosecutrix: To Justice of the Peace: Harmless Error. The justice of the peace testified that prosecutrix at first made complaint to him of an assault and battery committed upon her by defendant; and he further testified, over the objection of defendant, that he afterwards went to see the prosecutrix, and that, in answer to a question prepounded to her by him, she stated that defendant had forced her to comply with his wishes. *Held*, that, conceding the admission of this evidence to be error, it could not have prejudiced defendant's rights, and was, therefore, harmless.

8. ———: Character of Prosecutrix: Evidence: Objection Too Late. Where witnesses are permitted, without objection, to testify to the good character of the prosecutrix before it has been impeached, defendant's motion to strike out the testimony on the ground that it is of the witnesses' own knowledge of her character, and not of her general reputation, comes too late.

9. INSTRUCTION: Reasonable Doubt: Definition. A definition of "reasonable doubt" as being "a substantial doubt arising from the evidence, and not a mere possibility of innocence," is sufficient.

Appeal from Lawrence Circuit Court.—*Hon. F. C. Johnston,* Judge.

AFFIRMED.

*Henry C. Young* for appellant.

(1) The verdict is so clearly against the weight of the evidence, and is so manifestly the result of prejudice and passion, that this court is fully warranted in reversing the judgment and remanding the cause for a new trial. State v. Patrick, 107 Mo. 147; State v. Huff, 161 Mo. 459; State v. Prendible, 165 Mo. 329; State v.

Nesenhener, 164 Mo. 461. (2) Medical proof of the condition of the private parts and lower limbs of prosecutrix immediately after the assault was attainable, and yet no such proof was offered by the State. "And the practice seems to be, judging from the case just cited, not to permit a conviction in those cases in which it is alleged violence was done, without medical proof of the fact, whenever such proof is attainable." 1 Whart. Cr. Law (9 Ed.), secs. 555, 565; State v. Dickson, 78 Mo. 447; State v. Burgdorf, 53 Mo. 65. (3) The charge of rape is unsupported save by the *ipse dixit* of the prosecutrix and is contradicted by all of the surrounding facts and circumstances. Her action in swearing out a warrant against the defendant for a common assault within a few hours after the occurrence is so entirely inconsistent with human experience of the conduct of a ravished female, and so consistent with the defendant's statement, as to exclude the reasonable probability of his guilt. State v. Patrick, 107 Mo. 147; State v. Huff, 161 Mo. 459; State v. Dickson, 78 Mo. 447; Champagne v. Hamey, 189 Mo. 709; State v. Musick, 101 Mo. 271. (4) The court erred in permitting witnesses Belle Bilue and Lucy Siler to give the particulars of the offense as detailed to them by prosecutrix. State v. Jones, 61 Mo. 235; 3 Russell on Crimes, 232; 23 Am. and Eng. Ency. Law, 874; State v. Wertz, 90 S. W. 841. Nor did the action of the prosecuting attorney, at the close of all the evidence in the case, in withdrawing from the consideration of the jury "the details of this occurrence" and the details of the conversation as related by these witnesses, "but leaving for their consideration the main fact that she simply made complaint of the outrage," have the effect of curing the error. State v. Fredericks, 85 Mo. 150; State v. Thomas, 99 Mo. 235; State v. Hopper, 71 Mo. 425; Robbins v. State, 83 S. W. 693. (5) The court erred in permitting the prosecuting attorney to lead his witnesses throughout the trial of the case. State v. Boyd,

178 Mo. 2; State v. Wertz, 90 S. W. 843.     (6)    The
court erred in permitting the State to elicit from wit-
ness Rickman on cross-examination the statement that
prosecutrix told him in reply to his questions that de-
fendant forced her to consent to his wishes.    State v.
Patrick, 107 Mo. 147; State v. Burgdorf, 53 Mo. 65.    (7)
The court erred in permitting the State to bolster up
prosecutrix's reputation for chastity and good conduct
before it had been impeached.    State v. Huff, 161 Mo.
459; State v. Patrick, 107 Mo. 488.     (8)    The court
erred in the giving of the fourth instruction at the in-
stance of the State.    In defining the doctrine of reason-
able doubt the court cast upon defendant the burden of
establishing his innocence.  State v. Blue, 136 Mo. 41.

*Herbert S. Hadley,* Attorney-General, and *N. T.
Gentry,* Assistant Attorney-General, for the State.

(1) (a)    State's witness Belle Bilue testified to the
complaint made to her by prosecutrix a short time af-
ter the commission of the crime charged.    In fact, this
complaint was made before prosecutrix had gotten out
of bed and only a few minutes after defendant had left
the room.    This was clearly admissible as a part of the
*res gestae;* and also admissible as being a recent com-
plaint of the rape just commited.    State v. Patrick,
107 Mo. 163; State v. Warner, 74 Mo. 86; Stevens v.
Walpole, 76 Mo. App. 220; 3 Greenl. on Evid., sec. 213;
Roscoe's Crim. Evid. (7 Ed.), 879; Wharton's Crim.
Evid. (7 Ed.), sec. 273.    But even if error was commit-
ted in admitting said evidence, the trial court after-
wards, at the request of the State, withdrew said evi-
dence and instructed the jury not to consider the same.
(b)    The asking of leading questions is always a matter
to be addressed to the discretion of the trial court.    In
view of the charge against the defendant, and the nat-
ural modesty and hesitation of all women who are called
to testify in such a case, it cannot be said that the trial

court abused its discretion.  State v. Whalen, 148 Mo. 290; State v. Napper, 141 Mo. 401.  (c)  Defendant also objected to defendant's witness Rickman's answering the State's questions as to what the prosecutrix said to him about being raped by defendant.  Defendant placed this witness on the stand—he was a justice of the peace—and proved by him that prosecutrix made complaint to him at first of an assault made by defendant.  That afterwards, when no one was in his office she returned and told him all about it, and made the present complaint.  Defendant having brought out a part of the conversations that this witness had with prosecutrix, the State was entitled to have all of said conversations detailed.  State v. Moore, 156 Mo. 211; State v. Sassen, 75 Mo. App. 201.  (2)  The evidence discloses the commission of a crime which is one of the most revolting that has ever been committed in this State, and is sufficient to support the verdict.  State v. Dusenberry, 112 Mo. 296; State v. Boyd, 178 Mo. 19; State v. Miller, 111 Mo. 552; State v. Wilcox, 111 Mo. 575; State v. Yocum, 117 Mo. 626; State v. Sanford, 124 Mo. 487; State v. Dilts, 90 S. W. 782.

BURGESS, P. J.—At the March term, 1905, of the circuit court of Lawrence county, upon an information duly verified and filed by the prosecuting attorney of said county, the defendant was convicted of the crime of rape, and his punishment assessed at death.  Defendant's motions for new trial and in arrest having been overruled, he perfected his appeal to this court.

At the time of the commission of the alleged assault, the defendant, a negro, twenty-two years of age, was employed as day porter in the hotel of E. J. Shelpman, at Aurora, Lawrence county.  Myrtle Digby, the prosecutrix, a white girl, twenty years of age and unmarried, was employed as waitress and chambermaid at the same hotel, and had been working there for about a week prior to February 28, 1905, the date of the al-

leged assault. Her room was on the third floor of said hotel building, and defendant's room was some distance away in an attic of the building. A gravel roof extended from just under the window of the room occupied by the prosecutrix and over the window of the room occupied by the defendant.

The State's evidence tended to prove that the prosecutrix had retired early, and that about midnight she was awakened by the presence of defendant in her bed. She asked who it was, and defendant replied that it was Peck, alluding to the hotel clerk, and told her to hush up. She told him to get out, but defendant immediately put his hands on her throat and grabbed her arm in his teeth which he bit severely. He then told her that she might as well behave and submit to him, for he was going to have what he came in for if they hung him. The prosecutrix screamed several times and struggled to free herself from the clutch of the defendant, but he nevertheless succeeded in having sexual intercourse with her. He then made his escape through the window and went to his room, but before leaving he told the prosecutrix he would kill her if she moved while he was in there. While defendant was on the bed with her the prosecutrix heard footsteps at the door and heard some one turning the door knob, but the defendant prevented her from screaming by grabbing her throat. As soon as he left she unlocked the door and found Mr. Shelpman and the night porter there. The porter had heard the girl's screams and he awoke Mr. Shelpman and both came up to see what was the matter. She immediately told them of the assault made upon her by the defendant and showed them the marks of his teeth upon her arm and the finger prints and bruises on her neck. Her night clothes were torn, the bed clothes rumpled and some of them on the floor, and the rugs on the floor disarranged. Meanwhile Miss Belle Bilue and Miss Lucy Siler, who were also employees in the hotel, came out in the hall, and to them the prosecutrix made com-

plaint in full. They stayed with her the remainder of the night in another room. Mr. Shelpman went to the defendant's room and found him in bed, but not asleep. Defendant told him that he had been down to the brick hotel to sing with another negro.

Thomas Collins, night porter at the hotel, testified that the defendant came in that night about half past eleven o'clock, and that he remarked to the defendant that he was a little "jagged," and defendant replied, "No, I ain't, I am going to bed." That about ten minutes later he heard the girl scream, and he grabbed a club and went up to the door of her room, but could not get in, as the door was locked. That she kept hallooing, and he went down and awoke the landlord, and both went up after the landlord had put on his clothes. That he proposed pushing the door open, but the landlord would not allow him to do that. After a little while the girl opened the door and said, "Tom, it was a nigger." He asked her what nigger, and she said, "The day porter." Witness also testified that on the morning before the assault he heard the defendant express a desire to have sexual intercourse with the prosecutrix.

The defendant's testimony was to the effect that the first day the prosecutrix began working at the hotel she made advances to him, and suggested that he get men to come to her room. That she invited him to come to her room, saying that he was as good to her as if he was a white boy. He stated that he had sexual intercourse with her in her room on two different occasions prior to the night of this particular assault. That on the night of the alleged assault he had been down to a negro minstrel show at the opera house, and after the show was over he went with some of the performers over to another hotel and then went with them to the depot. That, by an arrangement previously made with the prosecutrix, he went to her room and got in bed with her. That while having sexual intercourse with her she accused him of running about with some of the

minstrel girls, and then struck him on the nose. That he then turned and bit her on the arm, and she screamed, whereupon he told her not to yell any more, as somebody might hear her and catch him in there. That he heard some one turn the door knob, but that prosecutrix assured him the door was locked.

The justice of the peace to whom prosecutrix first made formal complaint testified that she came to his office and told him that she wanted to make complaint against defendant. He said that there were two other men in the office at the time; that she was somewhat embarrassed and did not tell him the real character of the assault, and he, supposing it was merely a case of common assault, wrote a complaint to that effect, which she signed and swore to. Afterwards, on learning of the nature of the assault, he went to the hotel, when the girl gave him the details of the outrage, and he then prepared another complaint, charging the defendant with rape.

In rebuttal, the State proved that defendant had not been in the room of the prosecutrix prior to the night of the alleged assault, and before that night she occupied a room with another girl. The good reputation of the prosecutrix was established by a number of witnesses.

The contention that the verdict is against the evidence, and the result of prejudice and passion, is entirely without merit, as the evidence, if believed by the jury, who are the sole judges of the weight to be given to it, shows the guilt of the defendant beyond any question. The testimony of the prosecuting witness as to the outrage upon her by the defendant was corroborated in several respects, and to an extent such as to fully justify the conviction and repel the assertion that the verdict was the result of prejudice or passion.

It is absurd to say that there should not have been a conviction in the absence of medical proof of the perpetration of the outrage, when the prosecuting witness

testified to it in unequivocal language, and the defendant himself acknowledged that he had connection with her at the time and place stated, but with her consent. Medical proof was wholly unnecessary under such circumstances.

It is earnestly contended by counsel for defendant that the charge of rape is unsupported save by the testimony of the prosecutrix, and is contradicted by all the surrounding facts and circumstances. In support of this contention the fact that the prosecuting witness stated in her affidavit for the arrest of defendant, made a few hours after the offense was committed, that he did unlawfully and willfully assault, strike, beat and wound her, is relied upon as being so entirely inconsistent with human experience of the conduct of a ravished female, and so consistent with defendant's testimony, as to exclude the reasonable probability of his guilt. But a proper consideration of the attending circumstances and of the testimony of other witnesses renders this contention untenable. Human nature revolts at the crime of rape, and a female of ordinary modesty upon whom the criminal assault has been made reluctantly relates the details of the outrage upon her. Besides, many of them do not know the difference in law between a common assault or battery and assault and rape, and it is not to their discredit that they do not so know. The justice of the peace before whom the prosecutrix made the affidavit testified that when she came to his office and told him she wanted a warrant for defendant there were two men present in his office; that he asked what she wanted the warrant for, and what the defendant had done to her, and that she said, "He bit me and bruised me;" that when about to make out the warrant he asked her if that was all, and she replied, "I don't know, but I reckon so." He further stated that he was not as careful as he should have been in questioning her as to the facts; that the girl seemed timid and backward about talking in the presence of

one of the men who remained in his office; that a few hours afterwards he went to the hotel where the girl was to talk to her about the matter again, and asked her if the defendant forced her, when she assured him that he did. Under such circumstances, the most that can be said regarding the variance between the affidavit and the testimony of the prosecutrix upon the trial is that it went to her credit as a witness, nothing more.

Counsel for defendant next insists that the court erred in permitting witnesses Belle Bilue and Lucy Siler to give the particulars as detailed to them by the prosecutrix, of what occurred between her and the defendant, instead of stating the conversation or the substance of it between themselves and her and thus enable the court to determine whether what she said to them amounted to a complaint of ravishment. After the witness Bilue testified that she went into the room of the prosecutrix immediately after the offense was committed and found her raised up in bed and crying, and saw her night gown and waist torn, she proceeded to state, without other than a general objection from the defendant, what the prosecutrix stated to her regarding the assault and rape; but after the witness had thus testified counsel for defendant moved "to strike out all the testimony of this witness in regard to what the prosecuting witness told her after the commission of the crime." The motion was overruled, and defendant excepted. However, after the evidence was all in, the State, with the permission of the court, withdrew from the consideration of the jury all of the testimony of this witness which was objected to, and the court orally directed the jury to disregard it.

The authorities are uniform in holding that in prosecutions for rape, the particular facts of the crime as related by the prosecutrix at the time of or after making complaint of the injury are not admissible in evidence, except when drawn out from the complainant by cross-examination, or introduced as confirmatory of

her testimony after testimony has been introduced tending to impeach her. [State v. Jones, 61 Mo. 232; 3 Russell on Crimes, 232; 23 Am. and Eng. Ency. Law, 874.] That such testimony was inadmissible we think clear, and the withdrawal of it by the State and the exclusion of the same by the court from the consideration of the jury did not cure the error if the evidence was of such a character as to prejudice the defendant's case (State v. Hopper, 71 Mo. 425; State v. Fredericks, 85 Mo. 145; State v. Thomas, 99 Mo. 235), but its withdrawal will be sufficient if it be apparent from the evidence that it did not have or was not calculated to have that effect. Defendant testified in his own behalf that he had criminal connection with the prosecuting witness at the time and place as testified to by her, and the detailing by witness Bilue of the circumstances of the assault, as related to her by the prosecuting witness, could not, in our opinion, have in any way prejudiced the rights of the defendant.

The only objection made during the examination of witness Lucy Siler was that the questions propounded to her by the prosecuting attorney were leading. The court overruled the objection. As a general rule leading questions should not be asked a witness, but it rests almost entirely in the discretion of the court to allow or refuse to allow such questions to be asked, and a judgment should not be reversed upon that ground, unless it appears that such discretion was unwisely exercised, which does not appear to be the case in this instance. [State v. Napper, 141 Mo. 401; State v. Whalen, 148 Mo. 286, and authorities cited.] Belle Bilue was asked by counsel for defendant, upon cross-examination, "How did you come to wake up?" to which she replied: "The proprietor and porter came and woke me. And the time they were knocking at her door the nigger was choking her, and she could not move, and they woke me up and thought he was in her room, but did not know for sure and they woke me

up, and I jumped up in my night clothes and went to her door and I could not raise her, and I went and put on a loose dress, and when I got back to her door the second time the nigger had went out the back window, and the key was turned and I went in and saw Myrtle.'' Counsel for defendant interposed an objection to this answer upon the ground that it was not responsive to the question, which objection was overruled. He made no motion, however, to strike out the answer, as he should have done in order to avail himself of the right to have such evidence excluded, and must be considered as having waived it. [State v. Foley, 144 Mo. 600; State v. Lehman, 175 Mo. 619.]

It is said for defendant that the court erred in permitting the State to elicit from D. L. Rickman, on cross-examination, the statement that the prosecutrix told him, in answer to his question, that defendant forced her to yield to his demands. Rickman was a witness for the defense. He was a justice of the peace. He testified that the prosecutrix made complaint to him at first of an assault and battery made upon her by defendant, and that she said nothing that time about her having been forced by defendant to have connection with him; but witness was permitted to testify, over the objection of defendant, that thereafter, on the same day, he went to the hotel where the assault was committed, and that the prosecutrix, in answer to a question propounded by him, stated that the defendant forced her to comply with his wishes. Conceding this to be error, was it, under the circumstances as disclosed by the record in the case, of such a character as to prejudice the defendant's case? We think not. It added not one iota to the testimony of the prosecutrix, and this being so, it is inconceivable that the defendant could have been prejudiced in the remotest degree by its admission.

Defendant claims that the court erred in permitting the State to introduce testimony of the good char-

acter of the prosecutrix before it had been impeached. The record does not show that there was any objection whatever to the introduction of such testimony, and it must be held that the objection was waived. It is true that after witnesses Albert Daniels and J. W. Davis had testified, without objection, to the good character of the prosecutrix, the defendant moved to strike out this testimony upon the ground that it was of their own knowledge of her character and not of the girl's general reputation, but the objection was then too late. As was said in State v. Foley, supra, "A party cannot speculate upon evidence which is objectionable upon its face *when offered,* and afterwards complain of a refusal to reject it later in the trial. [Maxwell v. Railroad, 85 Mo. 95; State v. Hope, 100 Mo. 347; Hickman v. Green, 123 Mo. 165; State v. Marcks, 140 Mo. 656.]" It is also claimed that the court erred in giving the fourth instruction, at the instance of the State, in that it cast upon the defendant the burden of establishing his innocence. State v. Blue, 136 Mo. 41, is relied upon as sustaining this contention; but it does not do so. In that case reasonable doubt was defined by the trial court as being "a substantial doubt growing out of and *consistent* with the evidence," while in this case it is defined as a "substantial doubt arising from the evidence, and not a mere possibility of his innocence." It is apparent from a casual reading of the instruction that it did not impose upon defendant the burden of proving his innocence. An instruction couched in substantially the same language as the one challenged in this case was approved by this court in State v. Sacre, 141 Mo. 64.

The instructions covered every phase of the case, and are free from error. The evidence was of the most convincing character, and such as to leave no possible doubt in the minds of the jury as to the defendant's guilt. The jury found him guilty of the offense

charged against him, and their verdict met with the approval of the court.

We have been unable to find reversible error in the record, and, therefore, affirm the judgment, and direct that the sentence pronounced be executed.

All concur.