THE STATE v. GEORGE W. BURGESS, Appellant.

Division Two, June 23, 1914.

1. **RAPE: Corroboraton: Detailing Statements of Prosecutrix.** In corroboration of the testimony of prosecutrix in a rape case the State is entitled to prove by other witnesses that prosecutrix made complaint to them that she had been ravished, but the witnesses cannot be permitted on direct examination to detail the statements made to them by prosecutrix where defendant does not admit the sexual relation. The prosecutrix cannot be corroborated by proof that she made the same statements out of court that she makes at the trial.

2. ———: ———: **Defendant's Wife: Testimony as to Sexual Relation With Others.** It is error to permit the State to require defendant's wife, on cross-examination, to testify the details of a report she had heard to the effect that defendant before his marriage had sustained illicit sexual relations with another young woman. Defendant's reputation cannot be attacked by proof of specific immoral acts through a witness who has not testified to his good character.

3. ———: ———: **Corroboration By Proof of Wife's Separation.** Testimony that defendant's wife separated from him about the time of the alleged ravishment of the girl, or that she was jealous of him during a part of their marital life, is not competent for purposes of corroboration, nor is it harmless. Nor is it proper to permit the State on cross-examination of defendant's wife to prove more concerning her separation from him than the fact that she did separate from him about the time of the alleged offense, and if her testimony is that she did not separate from him at any time the inquiry should end there.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker*, Judge.

R-EVERSED AND REMANDED.

*R. J. Smith, Virgil McKau* and *J. P. Tribble* for appellant.

(1) The court erred in permitting the prosecuting attorney to ask leading questions in his examination-

in-chief of the prosecuting witness, practically the entire examination being leading. Since this matter rests in discretion, we have cited no authorities on the point, as the appellate court will decide each case according to the peculiar facts and conditions of that case. (2) The remark of the court was seriously prejudicial and was clearly expressive of the fact that the court was in sympathy with the prosecutrix, and that defendant's counsel were seeking to take an ungentlemanly advantage of her. Her poverty should not have served as a cloak for improper examination, or been considered as an evidence of guilt of the defendant, yet her condition in that regard was emphasized. In prosecutions for rape the accusation is too often taken for proof of guilt, and the heinous nature of the offense all too likely to sway the minds of the jurors, and such remarks were calculated to do incalculable harm. That the remarks were harmful is shown by the heavy verdict in spite of an almost, or quite, absolute failure of proof of rape. There was no proof of forcible ravishment, and her mental condition was not such as to render her incapable of consenting, according to the testimony, taken at its worst. (3) The court permitted the prosecuting witness to testify to the fact that she made complaint to others, long after the alleged ravishment. At that time defendant had not testified, nor denied the sexual intercourse, nor had the complaints made by her been brought out on cross-examination. This testimony was erroneous. There was no foundation for it, and it was too remote. State v. Bateman, 198 Mo. 221; State v. Jones, 61 Mo. 235. (4) It was error for the court to permit the prosecuting witness, in her direct examination by the State, to deny that she had made certain statements to other persons, contradicting her testimony. (5) Mrs. Lora Johnson was permitted to testify to statements made to her many hours after the alleged rape. This was error. State v. Bateman, 198 Mo. 221; State v. Jones,

61 Mo. 235. Furthermore, the statement made did not prove that she complained of rape, but merely of sex-ual intercourse, with but slight force, if any. (6) The court permitted the prosecuting attorney, while cross-examining defendant, to ask him concerning an alleged separation between defendant and his wife, caused by his alleged conduct toward the girl. This was im-proper, and should not have been permitted. This evi-dence could serve no other purpose than to make it appear that defendant's wife had believed him to be guilty. Her opinion of guilt or innocence was not com-petent, but no doubt had great weight in convincing the jury of his guilt. (7) Error was committed in permitting the prosecuting attorney to ask Mrs. Bur-gess whether she was crying shortly after she was told of her husband's conduct by prosecutrix; and also what she was crying about. On no conceivable theory could her mental condition be competent. (8) During the cross-examination of the wife of defendant she was asked if she did not jump on a girl and give her a whipping about her connection with her husband at Mrs. Jones's. Defendant's objection was overruled. She gave testimony that was not only incompetent, but damaging, and which was prejudicial in the ex-treme, when the nature of the charge against defend-ant is considered. The admission of this testimony was error. If offered to affect the reputation of de-fendant, it was still incompetent. Reputation is con-fined to general repute, and not to specific instances or other crimes. State v. Evans, 158 Mo. 609; State v. Welsor, 117 Mo. 570; State v. Bulla, 89 Mo. 595. (9) The court in permitting witness Starnes, introduced by defendant, to prove good reputation, to be asked whether he had heard of certain instances of defend-ant's wife whipping a girl on account of her husband's conduct, and whether he had heard that defendant left his wife and went to Caruthersville, and she had

followed him. This was clearly incompetent and improper, cross-examination. State v. Evans, 158 Mo. 609; State v. Reavis, 71 Mo. 420; State v. Tabor, 95 Mo. 590; State v. Harris, 209 Mo. 441. (10) The State was permitted, over the objection of defendant, to recall the wife of defendant, and to cross-examine her regarding alleged statements made by her to Lizzie Barnes, over the telephone, concerning her alleged separation from defendant on account of this trouble. This testimony could have no bearing on the case. It was merely showing to the jury that defendant's wife had at one time believed him guilty. The admission of this testimony was error. State v. Bell, 212 Mo. 122; State v. Willis, 119 Mo. 485. (11) Instruction 2, given on behalf of the State, was erroneous. There was not testimony sufficient to establish forcible ravishment. The testimony of prosecutrix, regarding the force used, was that he held both her hands with one of his and threatened to slap her if she hollered. She said she tried to push him back. Yet, she kindly warns him when she saw his wife coming, if she is to be believed at all, and says she did not get mad at him until after she had told his wife, and after they had been to see him in the field, and not then, until he ordered her to leave his home and, she says, threatened to whip her. She made contradictory statements to others until it seems incredible that she should have been believed at all. But even her testimony fails to disclose sufficient force, or such resistance on her part, as would indicate rape. State v. Witton, 100 Mo. 525; State v. Cunningham, 100 Mo. 394; Wharton on Crim. Law (9 Ed.), sec. 565; Roscoe's Crim. Evid. (7 Ed.), 879. Instruction 6, for the State, was erroneous. It singled out the matter of failure to make complaint, giving it undue prominence. State v. Hundley, 46 Mo. 414; State v. Smith, 56 Mo. 207; State v. Horn, 204 Mo. 550. Instruction 10, for the State, is erroneous in that it directs the jury, peremptorily, to consider the

fact that defendant is testifying in his own behalf. State v. Fairlamb, 121 Mo. 148; State v. Brown, 216 Mo. 354. The statute only authorizes the jury to consider these facts for the purpose of affecting the credibility of the witness, but this instruction goes further and practically deprives the defendant of all benefits of his own testimony, or that of his wife, of little weight at best.

*John T. Barker,* Attorney-General, and *William M. Fitch,* Assistant Attorney-General, for the State.

(1) Appellant in this complaint says that the prosecuting witness testified to the complaint she had made to others long after the assault, and this is assigned as error. A careful examination of the transcript will show that the defendant, on cross-examination, went over the identical grounds complained of, and not only so, but the testimony of the defendant tended to contradict and impeach the testimony of the prosecuting witness; either of these grounds would justify and render proper and competent the testimony here complained of. (2) Appellant complains of the testimony of Mrs. Lora Johnson, in which she gave in evidence certain statements made to her by the prosecuting witness after the alleged assault. On the authorities cited and relied upon by appellant such testimony was not erroneous. (3) Appellant says his cross-examination by the prosecuting attorney was improper in that the prosecuting attorney asked him concerning the separation between the defendant and his wife. The question as to whether or not the defendant and his wife had separated, and if separated, whether or not it was on account of the alleged assault by defendant on the prosecuting witness, is immaterial in this case. Those questions are foreign to the question to be determined by the jury. Being foreign, collateral or immaterial, they could not work a re-

versal of this case, even though such evidence were improperly admitted. If such evidence constitutes error at all, it must be classed as harmless error and not of such a substantial character as would justify this court in reversing the judgment. (4) The appellant complains of the manner in which the prosecuting attorney cross-examined the wife of defendant, and cites three cases in support of his contention. From a consideration of these cases as applied to the testimony shown in the transcript, we fail to see that appellant has established any grounds on this point whereby he can insist on this court reversing the judgment. This was on cross-examination and the manner of cross-examination is largely within the discretion of the trial court. State v. Harris, 209 Mo. 441. (5) Appellant complains that a witness introduced by defendant to prove good reputation, over defendant's objection, was asked whether he had heard of certain instances of defendant's wife whipping a girl on account of her husband's conduct. Defendant assigns this as improper cross-examination. On authority of cases which appellant cites this point must be ruled against appellant. As stated above, the matter of the cross-examination and its latitude is a matter that is largely within the discretion of the trial court. So long as the trial court does not abuse this discretion this court will not disturb a verdict on account of the exercise of such discretion of the trial court unless it clearly appears that the trial court has abused its discretion and by reason thereof that the defendant has been prejudiced in his case in some material respect. The State had a right to ask the questions to test the general knowledge possessed by the witness.

BROWN, P. J.—Convicted of rape and his punishment fixed at five years in the penitentiary, defendant appeals.

The information charges defendant with committing the crime of rape upon one Ivena Morris in Dunklin county, on June 7, 1912.

The evidence of the prosecuting witness tends to prove that defendant forced her to submit to sexual intercourse with him by pushing her onto a bed, holding her hands and threatening to slap her. Prosecutrix is a sixteen-year-old girl whose mind is, to some extent, impaired. She was making her home with defendant and his wife on a farm at the date of the alleged offense, the county paying $4 per month for keeping her. She was also working some as a house-servant to help pay her way.

The defendant and his wife spent the night preceding the alleged crime at the home of his mother-in-law who was very ill. On the following morning defendant returned home a short time before his wife.

Prosecutrix testified that defendant on returning home committed the crime before recited; that defendant's wife returned a few minutes later, and, upon making inquiry about the bed being disarranged, prosecutrix told her that defendant had ravished her.

Mrs. Burgess, the wife of defendant, testified that when prosecutrix told her of the misconduct of her husband she became angry, and, taking the prosecutrix with her, they visited the field where defendant was plowing, and she asked prosecutrix to repeat the charge to her husband. This prosecutrix would not do. The wife thereupon told defendant of the crime with which prosecutrix had charged him. Defendant denied the charge and accused prosecutrix of lying, and according to the testimony of defendant and his wife, prosecutrix admitted that what she had told was false.

An hour or so later the defendant returned to his house and told prosecutrix that she must leave—that he would not allow her to stay at his home any longer. The prosecutrix did leave the same forenoon. Defend-

ant's wife on the same day returned to the home of her sick mother, where she remained two days.

The prosecutrix visited the homes of three of defendant's neighbors (Mrs. Hankins, Mrs. Johnson and Mrs. Jones) on the day of the alleged crime. To these neighbors she stated that defendant and his wife had separated, and, upon being closely interrogated by said neighbors, stated that defendant had had sexual intercourse with her. To Mrs. Johnson, one of the three, she stated the details of the alleged forcible defilement.

The defendant denied having had sexual intercourse with prosecutrix, and sought to discredit her evidence by statements alleged to have been made by her to others to the effect that defendant did not have intercourse with her; and by statements elicited from prosecutrix on cross-examination to the effect that she had not sustained sexual relations with anyone before she was ravished; that the assault had not caused her any pain, and that she did not become angry with defendant until he had ordered her to leave his house.

Such other points in the evidence as are necessary to a full understanding of the issues presented will be noted in connection with the conclusions we have reached.

Defendant has assigned more than twenty alleged errors in his motion for new trial and brief. We will consider such of them as we deem worthy of special attention.

I.   Defendant's first assignment is that the court erred in permitting the State to ask the prosecutrix leading questions; and with this assignment comes another, that the trial court made a remark in the presence of the jury which prejudiced their minds against defendant.

Leading Questions: Remarks of Court.

During the direct examination of prosecutrix the following matters occurred:

"Q. While you were looking for this pattern did anybody come into the room where you were? A. Yes, sir, George.

"Q. Did he shut the door?

"Mr. Tribble: We object to that as leading.

"Q. Can you go on from there and tell what George Burgess said to you? A. No, sir.

"Q. Tell those men over there what George said to you. A. (Crying) I hate to.

"Q. You mean you are ashamed to? A. Yes, sir.

"Q. Did he take hold of you in that room? A. No, sir.

"Q. Can you tell the jury what he asked you? A. No, sir.

"Q. Is it because you are ashamed to? A. Yes, sir.

"Mr. Tribble: We object to these leading questions. She has already told Mr. Bradley about it and she can certainly and ought to tell it again.

"Mr. Bradley: She has said that she was ashamed to tell it.

"The Court. Mr. Tribble, there is a vast difference in telling such thing to just one person and getting on that witness stand before a room full of people. In some States in trials of this kind everybody is excluded excepting the parties interested, and this girl is entitled to as much consideration as if she had on a thousand-dollar dress. Go ahead, Mr. Bradley, and do the best you can.

"Mr. Tribble: We except to the remarks of the court. We are objecting to the leading character of the question, and agree that she is entitled to as much consideration as anyone else. . . .

"Q. Did Burgess push you over on that bed? A. Yes, sir.

"Mr. Tribble: We object to that because it is leading.

"The Court:  Overruled.

"Mr. Tribble:  We except.  . . .

"Q.  Do you know what sexual intercourse means; you know what that means?  A.  No, sir.

"Q.  Did this man do business with you there? A.  Yes, sir.  . . .

"Q.  What was said to him by you about his wife? What did you say to him about his wife coming while he was on you?  A.  I told him he had better get up, that I seen Dolly coming, and he said, 'I don't care if she is,' and so when Dolly got pretty close to the house he got up.

"Q.  Did you see Dolly coming yourself?  A.  Yes, sir."

In considering the admissibility of the leading questions which the court permitted the prosecuting attorney to propound, it is necessary to keep in mind the mental condition of the prosecutrix.  She testified that she had attended school; that the last books she studied were a fourth reader and an arithmetic.  Many of the witnesses testified that she had been a person of weak mind since she was a year old.  A physician gave it as his opinion that her mental development was only about fifty per cent normal—that she would not be likely to know that it was wrong to have sexual intercourse, and would probably not understand the nature and consequences of giving false testimony in a trial.  Many of her answers indicate that she is a person of average intelligence for her age.

Under this showing, and without knowing the appearance or physical demeanor of witness while testifying, we are constrained to hold that the court did not err in permitting the prosecutor to ask the leading questions hereinbefore recited.  A liberal discretion is allowed to the trial court in such matters. [State v. Bateman, 198 Mo. 212; State v. Whalen, 148 Mo. 286.]

However, we are not able to lend our endorsement to the remark of the court by which defendant's attorney was reprimanded, without cause, for merely objecting to leading questions. In making his objections he was acting in a perfectly natural and legitimate manner. The remark complained of was calculated to lead the jury to believe that the court thought defendant to be guilty, and that his attorney was wrongfully trying to suppress the truth.

It is not the proper function of a trial judge to act as prosecutor, or even assistant prosecutor—he should, as far as possible, refrain from making remarks which may lead the jury to understand upon which side of the case his sympathies fall—he should conduct himself as an impartial umpire in the legal struggle between the State and defendant. While condemning the improper remark of the trial court, we are not holding that this alone would be sufficient to work a reversal if the record were otherwise free from error.

II. A further insistence of defendant is that error was committed in permitting the prosecutrix, on her direct examination, to deny that she had made statements to other persons to the effect that defendant did not ravish her—that he tried to do so, but did not succeed. It was also assigned as error that prosecutrix was allowed to testify that she made complaint of her mistreatment to other parties on the same day she was ravished. It was certainly at variance with the order of proof designated in section 5231, Revised Statutes 1909, to permit rebuttal testimony to come in before the defendant had offered any evidence. Under the facts of this case it was harmful to defendant to permit prosecutrix to testify that she had told Mrs. Hankins, Mrs. Jones and Mrs. Johnson that she had been ravished, for the reason that when those same witnesses were introduced

*Order of Trial.*

they did not testify to facts which amounted to a complaint.

The evidence of all the witnesses last named is to the effect that prosecutrix merely told them that defendant and his wife had separated over her (prosecutrix). The alleged fact that a crime had been committed by defendant was only ascertained by the witnesses by the diligent application of interrogatories to prosecutrix. Information thus obtained does not amount to a complaint of having been ravished within the contemplation of the law. In 33 Cyc. 1467, the doctrine is announced as follows: "As a rule statements made in answer to questions or otherwise involuntarily elicited do not constitute such complaint as is admissible under the rules above stated." See, also, State v. Pollard, 174 Mo. 607, 1. c. 616. By allowing prosecutrix to testify that she did make complaint to those witnesses that she had been ravished, when she had not in fact voluntarily made any complaint, was allowing her to corroborate her own evidence as to the fact that a crime had been committed—a thing which clearly ought not to have been permitted. Upon a retrial of the cause (if the State elects to re-try) the court should require the proof that a complaint was made by prosecutrix (if she made one) to be established by the evidence of those persons to whom the complaint was made.

III. A further contention of defendant is that the court, over defendant's objection and exception, permitted the prosecuting attorney to prove by witness Lora Johnson, on her direct examination, the specific acts of defendant

Corroboration.

which prosecutrix related to her as constituting the offense of rape. The State was entitled to prove by Mrs. Johnson that prosecutrix made complaint to her that she had been ravished, but as that witness was speaking only from hearsay, she should not, upon her

direct examination, have been permitted to give the details of her conversation with prosecutrix. [State v. Bateman, 198 Mo. 212; State v. Lawhorn, 250 Mo. l. c. 306.]

In the instant case the witness Johnson, whose intellect was not impaired, gave evidence to the effect that prosecutrix made to her (Johnson) about the same statements which prosecutrix testified to on the trial of the cause. This evidence also came in response to leading questions which suggested, in the plainest manner, the answers desired. To permit a party to corroborate a witness by proof that on some other occasion the witness made the same statements to another party which he or she has testified to upon the trial, would set up a new and dangerous method of corroboration.

Where a witness has made statements out of court which are in conflict with his evidence as given upon a trial, such conflicting statements may be shown to discredit the witness; but there is no rule that permits the corroboration of a witness by proof that he has made the same statements to different persons. If such a practice as the State adopted in this case were permitted, an untruthful witness could then corroborate himself as to a falsehood by first relating the falsehood to other parties, and then, after he has sworn to the falsehood, introduce such other parties to show that he has theretofore made the same statements to them. Of course, upon the coming in of evidence that a witness has made statements which conflict with his sworn testimony, other evidence may be introduced which tends to prove that no such conflicting statements were made.

In the Bateman case it was held that the admission of the class of evidence complained of was not reversible error where the defendant admitted the act of sexual intercourse with prosecutrix; but the defendant here makes no such admission.

The statements of prosecutrix relating to the details of the alleged crime made to Mrs. Johnson some twelve hours after the offense was committed (if committed) were not made in the presence of defendant, and the act of the court in permitting Mrs. Johnson to give the details of such conversation as part of her direct examination constituted reversible error.

IV. The trial court and the prosecuting attorney seem to have deemed it absolutely necessary to prove **Complaint.** that prosecutrix made a complaint to someone of the fact that she had been ravished; otherwise a conviction could not be obtained. Such is not the law. A voluntary complaint of prosecutrix is no element of the crime, but only tends to corroborate her evidence where she testifies to facts which tend to prove that she was ravished. [State v. Miller, 191 Mo. l. c. 612; State v. Marcks, 140 Mo. 656.] If the prosecuting witness is so feeble-minded that she did not know that it was wrong for the defendant to have sexual intercourse with her, then she will not be required to make either outcry or complaint; and a conviction may be sustained without any proof that a complaint was made by her to anyone.

The law relating to rape committed upon an insane woman was correctly announced by the trial court in its instruction number 3, which reads as follows:

"The court instructs the jury that if you believe and find from the evidence that the defendant, at and in the county of Dunklin, and State of Missouri, at any time before the filing of this information, did wilfully and feloniously have sexual intercourse with one Ivena Morris, and if you further believe and find from the evidence that at the time of such intercourse, if you believe it was had, the said Ivena Morris was a person of unsound mind and of such weak intellect and intelligence that she could not and did not know or comprehend the nature and consequence of such an act,

and could not understand right from wrong, you will find the defendant guilty of rape, and assess his punishment at death or imprisonment in the penitentiary for a term of not less than five years." [State v. Williams, 149 Mo. 496; 33 Cyc. 1426.]

V. The cross-examination of defendant's wife was allowed to assume undue bounds. She was not only examined rigidly as to the alleged separation of herself from defendant, but was required to detail the fact that she had heard a report to the effect that her husband had sustained illicit sexual relations with one Eva Davidson before his marriage to witness. This evidence was not admissible. The witness had not been interrogated regarding this report during her direct examination (Sec. 5242, R. S. 1909), and defendant's reputation cannot be attacked by proof of specific immoral acts through a witness who has not testified to his good character. [State v. McDonough, 232 Mo. 219, l. c. 234.] The defendant had testified in his own behalf, and if his general reputation was bad he could have been impeached or discredited by calling some of his neighbors who had heard of his immoral acts. [State v. Phillips, 233 Mo. 299.] It was not permissible to establish his bad reputation by an improper examination of his wife.

Examination of Defendant's Wife.

In the trial of the cause the prosecuting attorney seems to have thought the evidence of prosecutrix needed corroboration, and that if he could prove defendant's wife left him about the time it is charged that he committed the crime for which he was then on trial, or if it could be proven that defendant's wife was jealous of him during any part of their marital life, this would furnish the desired corroboration. The State introduced pages of evidence for the sole purpose of showing that a separation did take place.

While some of this evidence was not objected to in a proper manner, and is not before us for review, I feel constrained to call attention to its incompetency now, to the end that the case may be retried upon proper evidence.

The learned Attorney-General admits that evidence tending to show that defendant's wife left him was immaterial, but claims that such evidence was harmless. We do not concur in this view. If defendant's wife knew he was guilty it would have a strong tendency to make her desire to leave him, and a jury might be led to believe that, if defendant's wife left him about the time he is charged to have committed the crime, she did so because of personal knowledge on her part that he was guilty. It is a matter of which we take judicial notice that wives frequently desert their husbands, and husbands their wives, for causes wholly disconnected with sexual crimes, and often for no real cause at all. The evidence of defendant's wife on cross-examination was emphatically to the effect that she did not leave her husband at anytime, and the inquiry, being as to a collateral matter, should have ended there.

VI. Defendant also complains of the following instruction given on the part of the State:

"The court instructs the jury that under the law the defendant is a competent witness in his own behalf, and that his wife is a competent witness to testify for him, but in determining what weight you will give to the testimony of the defendant and his wife, you are instructed to take into consideration the fact that he is the defendant testifying in his own behalf and his interest in the result of this trial, and you will also take into consideration the fact in determining what weight you will give the testimony of his wife, that she is his wife, testifying for him."

Instruction.

The above instruction is quite similar to the stock instruction given in nearly all criminal cases in which the wife testifies on behalf of the husband. The only difference in the instruction now in judgment and those generally given and often approved by this court, is that the instruction usually given follows more nearly the words of the statute and directs the jury that it *may* take into consideration the fact that the defendant and his wife are interested in the result of the trial; while the instruction above quoted and given in this case makes it the direct and imperative duty of the jury to consider the fact that the defendant and his wife are interested in the result of the trial—this regardless of whether they believe that such witnesses have sworn truthfully or falsely.

I suppose if the instruction as given in this case is approved it will next be in order for some trial judge to further disregard the law which prohibits instructions that comment upon the evidence (Sec. 5244, R. S. 1909) by telling the jury that they ought not to believe the testimony of defendant or his wife because they are interested in the result of the trial, thereby wiping out all benefit which a defendant and his wife, or a defendant and her husband, may derive from their statutory right to give evidence in behalf of each other, or in behalf of themselves in criminal trials.

Speaking for myself, I do not believe that the proviso in section 5242, Revised Statutes 1909, which permits the fact to be shown that a witness is a defendant, or the husband or wife of defendant, ''for the purpose of affecting the credibility of such witness,'' was ever intended to authorize a court to give an instruction telling the jury how to weigh such evidence. Jurors are presumed to be men of fair natural sense.

It has long been the law that the interest of a witness in the result of a trial, or his relationship to the accused or other party to the suit, may be shown for the purpose of casting discredit upon his evidence.

[State v. Elkins, 101 Mo. 344; Waddingham v. Hulett, 92 Mo. 528; and State v. Decker, 161 Mo. App. 396.] In 40 Cyc. 2657, the rule is announced that: "The fact that a witness is a relative of a party bears on his credibility, and so where husband and wife testify for each other the relationship should be considered. The fact of relationship does not, however, establish interest or bias, but is merely a circumstance from which it may be inferred."

So that the proviso of section 5242, before noted, adds nothing to the law of evidence, and ought not to have been made the subject of a special instruction. While I do not approve the instruction as given in this case because it tends to enlarge or expand a class of instructions which have a very shadowy footing in law, in the recent case of State v. Hyder, 258 Mo. 225, I did approve an instruction of that character given in the usual form. I did this not because I believed such an instruction ought to be given, but because such instruction had so often met with the approval of this court, and was probably harmless in that case, where the guilt of defendant was proven by an overwhelming array of evidence, and where the testimony of the wife related to a matter upon which she had no reliable knowledge.

In the Hyder case and many other cases therein noted instructions calling attention to the interest of a specifically named or designated witness was severely criticized, and I do not wish prosecutors or trial courts to understand that because I have upheld such instructions as harmless I will continue to do so. In a doubtful case where such an instruction has proven prejudicial to defendant on the merits I may consider it reversible error.

VIII. The evidence that prosecutrix was kept at a poor-farm at the time of the trial did **Evidence of Poverty.** not harm defendant in this case, because

he had already voluntarily testified that the county was paying him for her keep while she was at his home.

Several other matters are complained of by de-fendant, but we cannot discuss all of them without making this opinion unnecessarily long. If the attorneys and trial court will acquaint themselves with the law pertaining to this class of cases, the cause may be retried (if the State elects to retry) in accordance with the law.

For the errors of the court noted in paragraphs III and V of this opinion the judgment of the trial court is reversed and the cause remanded.

*Walker, P. J.,* concurs in result; *Faris, J.,* concurs in paragraphs 3 and 5·and result.