## THE STATE v. SCULLIN-GALLAGHER IRON & STEEL COMPANY, Appellant.

### Division Two, May 31, 1916.

1. **FOUNDRIES: Toilet Rooms: Constitutional Statute.** The Act of 1913, Laws 1913, p. 401, requiring every corporation or person engaged in operating a foundry in which ten or more men are employed to provide suitable toilet rooms, containing washbowls or sinks provided with running water, hot and cold, and water closets connected with running water and a suitable room, properly heated and ventilated, wherein the men may change their clothes, is a reasonable exercise of the police power and is constitutional, since the employment is such that it subjects those engaged in it to extreme changes of temperatures, exposure to dirt and danger, and demands great endurance.

2. ————: ————: **Special Law.** Said act is not a special law; it is not an arbitrary singling out of one of the many forms of industrial activity. Foundries are not a subdivision of factories, but a class within themselves.

Appeal from St. Louis Court of Criminal Correction.— *Hon. Calvin N. Miller,* Judge.

AFFIRMED.

*Schnurmacher & Rassieur* for appellant.

The act in question is a special law, although a general law might have been made applicable and it, therefore, violates sub-division 32 of section 53 of article 4 of the Constitution of Missouri. And since said act imposes certain burdens upon the owners of foundries, without imposing a similar burden upon other like establishments, where ten or more men are employed, it also violates sub-division 26 of section 53 of article 4. The act also violates section 1 of the Fourteenth Amendment to the Constitution of the United States, in that it unlawfully abridges the privileges and im-

munities of this defendant and denies it the equal protection of the laws. State v. Bottling Co., 261 Mo. 300; State ex inf. v. Southern, 265 Mo. 286; State v. Baskowitz, 250 Mo. 82; State v. Miksicek, 225 Mo. 561; Woolley v. Mears, 226 Mo. 41; State ex rel. v. Ashbrook, 154 Mo. 375; State v. Thomas, 138 Mo. 100; State v. Walsh, 136 Mo. 405; State v. Julow, 129 Mo. 163; State v. Loomis, 115 Mo. 307.

*John T. Barker,* Attorney-General, and *Lee B. Ewing,* Assistant Attorney-General, for the State.

(1) Every act of the Legislature, duly passed, is presumed to be valid and constitutional. The burden is upon him who attacks its constitutionality to clearly show that it is violative of some constitutional provision. Ex parte Loving, 178 Mo. 203; State v. Cantwell, 179 Mo. 280; State v. Aloe, 152 Mo. 477; Pike v. Thompson, 144 Mo. 322; State ex rel. v. Pike County, 144 Mo. 280; Railroad v. Andrews, 174 U. S. 96; Atkins v. Kansas, 191 U. S. 223. (2) Where there is doubt as to the constitutionality of an act, it will be resolved in favor of the validity of the act. No act of the Legislature will be deemed unconstitutional unless it appears so beyond a reasonable doubt. If reasonable minds might differ as to the constitutionality of legislation, it will be upheld as constitutional by the courts. State v. Cantwell, 179 Mo. 280; Ex parte Loving, 178 Mo. 321; State v. Abel, 65 Mo. 357; County v. Griswold, 58 Mo. 192; Coal Co. v. State, 17 L. R. A. 385; Atkins v. Kansas, 191 U. S. 207; Railroad v. Williams, 199 N. Y. 127; Munn v. Illinois, 94 U. S. 123. (3) The expediency or inexpediency of an act is a question for the Legislature and not for the courts. The judiciary cannot inquire into motives and necessities which may have superinduced the passage of the act. Brown v. Cape Girardeau, 90 Mo. 383; County v. Griswold, 58 Mo. 192; State v. Hayes, 49 Mo. 604; Bennett v. Boggs, 1 Baldwin (U. S.), 74;

Atkins v. Kansas, 191 U. S. 207; Munn v. Illinois, 94 U. S. 113. (4) The act is not a special act but relates to all persons of the class mentioned therein. State ex rel. v. County Court, 128 Mo. 427; Eltinge v. Hickman, 172 Mo. 257; State v. Webber, 214 Mo. 277; State ex rel. v. Taylor, 224 Mo. 477; State v. Railroad, 229 Mo. 239; State ex inf. v. Southern, 265 Mo. 286; Railroad v. Arkansas, 219 U. S. 466. (5) The act is not class legislation. State v. Cantwell, 179 Mo. 254; Luther v. Saylor, 8 Mo. App. 424; Hammon v. Coal & Coke Co., 156 Mo. 232; State ex rel. v. Mercantile Co.; State v. Tower, 185 Mo. 19; State v. Swagerty, 203 Mo. 517; State v. Webber, 214 Mo. 272; State v. Miksicek, 225 Mo. 561; White v. Railroad, 230 Mo. 287; Advertisement Co. v. St. Louis, 235 Mo. 99; State v. Railroad, 242 Mo. 339; Embree v. Road Dist., 257 Mo. 593; Mueller v. Oregon, 208 U. S. 410; Harbison v. Iron Co., 183 U. S. 13; People v. Lochner, 177 N. Y. 145; Ritchie v. Wayman, 224 Ill. 509. (6) In passing upon the constitutionality of a given act of the legislative department of the government, courts will give great weight to history of contemporaneous legislation upon such questions, and the fact that such legislation has long stood upon the statute books unchallenged is strongly persuasive of its constitutionality. The law is a progressive science and adapts itself to changing conditions. The Legislature is the representative body of the government, and, as all governmental power emanates from the people, this representative body has the right to declare the public policy of the State. Miller v. Oregon, 208 U. S. 420; Patterson v. Bark Eudora, 190 U. S. 169; Coal Co. v. West Virginia, 17 L. R. A. 385; State v. Loomis, 115 Mo. 324; Holden v. Hardy, 169 U. S. 387; McLane v. Arkansas, 211 U. S. 539; Ex parte Loving, 178 Mo. 202.

WALKER, J.—This suit, in the nature of a criminal proceeding, was instituted by information in the

St. Louis Court of Criminal Correction against the defendant for failing to comply with an act of the General Assembly (Laws 1913, p. 401) requiring foundries to provide for their workmen certain sanitary conveniences described in the act. Upon a trial the defendant was found guilty and fined fifty dollars, from which it appeals. The constitutionality of the act is assailed, hence our jurisdiction. The portion of the act necessary to be considered is as follows:

"Every corporation, company or person in this State engaged in operating any foundry in which ten or more men are employed is hereby required to provide suitable toilet rooms, containing washbowls or sinks provided with running water, hot and cold, water closets connection with running water and a suitable room or place wherein the men may change their clothes, said room to be directly connected with the foundry building, properly heated, ventilated and protected with a suitable locker or place to properly change his clothing or wearing apparel."

The purpose of this statute is commendable. Primarily it is intended to improve the sanitary conditions under which a class of workmen labor. The nature of their employment, speaking from the commonly accepted knowledge of the vocation they pursue, of which we are entitled to take notice, is such that it subjects those engaged in it to extreme changes of temperature, exposure to dirt and danger, and demands great endurance. Laborers thus environed are entitled to the utmost exercise of the State's police power in their behalf, consonant with a reasonable interpretation of constitutional limitations. The enactment of laws of the character here under review must be such as upon a fair analysis will not subject the State to the charge of bestowing a favor. "The State," said a great commentator on constitutional law, "has no favors to bestow." [Cooley's Con. Lim (7 Ed.), p. 563.] Its pur-

pose wisely directed is, while legislating for the better-
ment of its citizens, to so frame its laws as to inflict no
arbitrary discriminations nor confer any privileges not
common to the class included within the law.　In thus
exercising its police power it must of necessity classify
the objects of legislation, and in such classification a
wide range of discretion is not improper.　[Fidelity
Mut. Life Assn. v. Mettler, 185 U. S. 308.]　A law
enacted for the common good is to. be liberally con-
strued; and a like rule may, without violating the
canons of construction, be applied within reasonable
limitations to an enactment which extends only to a
class.

In the construction of such a statute as we have
here, certain well established rules are to be observed,
to-wit: its enactment is accompanied by a presumption
of validity, and the burden is on him who asserts to the
contrary (Shohoney v. Railroad, 231 Mo. 131; State
ex rel. v. Williams, 232 Mo. 56; State v. Parker Dist.
Co., 236 Mo. 219; Miners' Bank v. Clark, 252 Mo. 20);
every reasonable intendment must be made in favor of
the validity of the statute, and its unconstitutionality
must appear beyond a reasonable doubt (Bledsoe v.
Stallard, 250 Mo. 154; Board of Commissioners v. Pet-
er, 253 Mo. 520; State v. Buente, 256 Mo. 227); nor
will courts inquire into the wisdom or expediency which
prompted the enactment of the statute; this is for the
Legislature (State v. Smith, 233 Mo. 242; Ex parte
Welborn, 237 Mo. 297).

It is contended that the act in question is special in
its application in that it is said to arbitrarily and un-
justly make one of the many forms of industrial ac-
tivity the object of legislation and thereby except oth-
ers of the same natural class from its provisions.　The
concrete contention is that foundries are by the act sub-
jected to regulations from which other employers of
labor are by exclusion exempted; that the act, to have
met the constitutional requirement against special leg-

islation, should have been directed against "establishments" generally and not "foundries" particularly. This attempted generalization is too broad and would in its application render the law vague and indefinite. The word establishments means nothing more colloquially or legally than the word institutions. [Trustees of Academy v. Bohler, 80 Ga. 159.] It is usually applied to concerns of a public nature and frequently includes the places where they are conducted as well as the physical things connected therewith. [Lane v. Smythe, 46 N. J. Eq. 443; Boon v. Moss, 70 N. Y. 465.] In the vernacular of the early French settlers of this State the word "establishment," the same as our English word establishment, meant nothing more than is implied by the word settlement. [Dent v. Bingham, 8 Mo. l. c. 596.] It is evident, therefore, that the word sought to be substituted for the word foundries, under the contention of appellant, if construed either according to its ordinary meaning or as judicially defined, would fail on account of its generality to effect the purpose intended by the act. Nor is this all. If the act was thus generalized it could not with certainty, such as is required of a criminal statute, be made applicable to any form of industrial activity and as a consequence it would be rendered nugatory. Further heeding the contention of defendant, it is said the act contains an arbitrary classification, by which is meant one not based on such a difference in the situation and circumstances of the subjects classified as to render it necessary and proper to enact legislation in regard thereto. [State ex rel. v. Cooley, 56 Minn. 550.]

Foundries are said by the courts to be works for the casting of metals. [Benedict v. New Orleans, 44 La. Ann. 793.] Thus defined they cannot either in technical terms or popular parlance be considered as a subdivision of the general term factories or manufactories, and hence they constitute a class within themselves. Thus classified, we find that the conditions and circumstances

under which foundry men work are different from those of other workmen, and that such difference is sufficient to authorize the enactment of a law in the exercise of the State's police power to ameliorate their condition. The act, under this state of facts, cannot be said to create an arbitrary classification and is not subject to criticism as à special law.

There runs through the history of our legislation a well marked line of acts regulating the conditions of labor in different vocations. Many of these have received judicial sanction. Note the following: Fixing the maximum amount of damages that may be recovered for the wrongful death of a miner, different from that allowed for the death of another under the general law (Hamman v. Central C. & C. Co., 156 Mo. 232); requiring screens to be built around vestibules of electric cars for the protection of motormen—no such protection afforded cars having other mótive power than electricity (State v. Whitaker, 160 Mo. 59); imposing a burden upon railroad companies in regard to their employees not required of other common carriers or employers (Powell v. Sherwood, 162 Mo. 605); an ordinance of the city of St. Louis exempting keepers of meat shops from the statutory provisions of the Sunday law by authorizing them to keep open until nine o'clock in the morning of that day (St. Louis v. DeLassus, 205 Mo. 578).

We point to these precedents not as necessary to establish the validity of the act in question; this has been done by determining the meaning of its terms and the legislative intent in its enactment. The precedents, however, serve the purpose of emphasizing the rule that exceptions founded on reason may be made in an act to a general statute or ordinance without infringing the constitutional inhibition against special legislation.

From all that has been said the judgment of the trial court should be affirmed and it is so ordered. All concur.