**STATE of Missouri, Respondent,**

v.

*Charles* **WALLER,** *Appellant.*

No. 50124.

Supreme Court of Missouri,

Division No. 1.

Oct. 12, 1964.

Thomas F. Eagleton, Atty. Gen., Howard L. McFadden, Asst. Atty. Gen., Jefferson City, for respondent.

Charles Waller, pro se.

WELBORN, Commissioner.

This is an appeal from a judgment denying relief to appellant in a proceeding under Supreme Court Rule 27.26, V.A.M.R. The motion to vacate, filed in the Wayne County Circuit Court, sought to set aside a judgment and sentence entered by that court on April 26, 1954, on appellant's plea of guilty to a charge of murder in the second degree. The sentence imposed was imprisonment for a term of 50 years. After a hearing on the motion, the circuit court found the issues against the appellant and this appeal ensued.

The motion in this case was apparently prepared by the appellant himself. However, he was represented at the hearing by counsel of his choosing who withdrew prior to the perfection of this appeal. The hearing in the circuit court was directed at two allegations of the motion: That the plea of guilty was secured by fear and trickery and that a statement taken from the appellant was induced by coercion. Evidence was heard on both of these issues. However, inasmuch as appellant's conviction was on a plea of guilty, the circumstances of the statement or confession are not material in this proceeding.

The evidence at the hearing showed that the offense for which appellant was convicted occurred on January 9, 1954. The victim was Odie Eaton, a tavern proprietor. Appellant and his brother were drinking at the tavern. An argument arose between Eaton and the appellant. Eaton threatened appellant with a blackjack and appellant's brother persuaded the appellant to leave the tavern. Appellant walked to his home approximately one-half mile from the tavern, procured a shotgun, walked back to the tavern and shot through the window, inflicting the fatal wound on Eaton. The trial court found that the shooting occurred some 45 minutes after appellant left the tavern.

Appellant was arrested shortly after the shooting and taken to the county jail in Greenville. On the same night, appellant gave the arresting officers an account of the shooting which was reduced to writing and signed by appellant and in which he admitted the shooting. According to the sheriff who participated in the arrest, appellant "had been drinking, yes, but I have seen people a lot drunker."

On February 17, 1954, Roy W. McGhee, Jr., Prosecuting Attorney of Wayne County, filed an information in the Wayne County Circuit Court, charging appellant with murder in the first degree.

J. Ben Searcy, an able and experienced member of the Shannon County Bar, was employed by appellant's family to defend appellant. At the hearing on the appellant's motion, Mr. Searcy was called as a witness by the appellant. According to Mr. Searcy, he investigated the circumstances of the homicide and concluded that defense against the charge of murder in the first degree would be very difficult. Mr. Searcy represented appellant on his preliminary hearing and thereafter discussed the case with the prosecuting attorney. The prosecuting attorney originally refused to consider reduction of the offense charged, but, early in April, 1954, he did agree to reduce the charge to murder in the second degree and to recommend a 50-year sentence if a plea of guilty was entered to that charge. Mr. Searcy discussed this proposition with appellant, who remained in the county jail until his sentencing. Mr. Searcy also addressed to appellant a lengthy letter in which he explained to the appellant the punishment for murder in the first degree and possible defenses to that charge. In the letter, Mr. Searcy further stated:

" * * * I have studied the Missouri law relative to murder very carefully during the last three weeks and I have not found anything that would justify the Court in giving us a second degree instruction. This would mean that the only thing that the jury would pass upon would be as to your guilt or innocence of the crime of first degree murder and, upon them finding you

guilty your punishment would be assessed at death or life imprisonment and nothing else. We do not have sufficient evidence to justify a jury in returning a verdict of not guilty of first degree murder so I think it would be very foolish for us to turn down, the offer of fifty years on pleading guilty to second degree murder.

"Please understand that the Judge is in no way bound by the recommendation of the Prosecuting Attorney but, I have been practicing law in Judge Eversole's Court for the space of ten or twelve years and I am reasonably sure that he will follow the recommendation. As your attorney, after giving your case careful and deliberate consideration, I advise you to enter a plea of guilt to the crime of second degree murder with the understanding that the Prosecuting Attorney will recommend a sentence of fifty years."

On April 26, 1954, the prosecuting attorney amended the information to charge the appellant with murder in the second degree. Thereupon, appellant, with Mr. Searcy present, entered a plea of guilty to that charge and was sentenced to 50 years' imprisonment.

The appellant testified in his own behalf. According to him, Mr. Searcy visited him only twice while he was confined in jail. He saw him once a few days after his arrest and at the preliminary hearing when, according to appellant, Searcy told him: "This looks pretty bad. You have got a pretty bad case."

Appellant's testimony relative to his discussion of the plea of guilty to a charge of murder in the second degree is somewhat confused. He acknowledges that Searcy told him that the prosecuting attorney would not recommend a sentence of less than 50 years on a plea of guilty to a charge of murder in the second degree. He denied having received the letter addressed to him by Searcy, in which the latter fully explained the alternatives which existed as he viewed the matter. However, the appel-

lant acknowledged receipt of another communication addressed to him by Searcy.

We gather from the appellant's testimony that his hope of receiving less than a 50-year sentence arose primarily from conversations with his brother, John Waller. According to appellant: "I felt that after my brother had given me the information after hiring me a lawyer, that with his information coming from him would be the same as if it come from my lawyer and he said I would get under 15 years and I felt that it would be 10." John Waller, called as a witness by appellant, did not testify regarding any matter other than the events at the tavern prior to the shooting.

Appellant's version of the events on his plea of guilty was as follows:

"We were standing out in the middle of the floor there. They brought me up there. I didn't know whether I was going back that way or coming this way. He said, 'He (sic) get over here,' and they pushed me over there. I got over there and he said, 'You plead guilty.' I looked at this Judge and looked at the lawyer. I figured that he would say something to the Judge. He never said a thing. He kept telling me to plead guilty. I said, 'There ain't nothing I can do, I ain't got no money.' I said, 'Okay.' So, the Judge started in sentencing me. My lawyer didn't say anything."

On the basis of the evidence presented, the trial court concluded that "there is no basis in fact for defendant's claim of fraud, collusion, apprehension, persuasion, misapprehension and lack of representation by counsel." On our review de novo on this appeal (Supreme Court Rule 28.05, V.A. M.R.), we arrive at the same conclusion.

The appellant's attorney, according to the credible evidence, clearly explained to the appellant that his plea of guilty to a charge of second degree murder would result in a recommendation by the prosecuting attorney of a 50-year sentence and that the judge would likely accept that recommenda-

tion. We find nothing in the testimony of appellant himself to show that Mr. Searcy gave appellant reason to expect otherwise. The assertion in appellant's motion that "the defendant's counsel told him that the only way defendant could escape the Death Penalty was to plead guilty and that the prosecutor had assured him that if the defendant would plead guilty he would recommend ten (10) years, and that it was all fixed up" simply is not supported by any evidence whatsoever. In his own testimony at the hearing, the appellant did not claim that such statement had been made to him by Mr. Searcy.

We are of the opinion that the evidence clearly showed that appellant's plea of guilty was entered voluntarily with full knowledge of its consequences. No basis for the relief sought has been presented. State v. Freedman, Mo.Sup., 282 S.W.2d 576, 581.

■ Other matters asserted in the motion are without merit. The complaint that the 50-year sentence is excessive affords no basis for relief in this proceeding, the punishment being within the limit authorized for murder in the second degree. Sections 559.030, 546.490, RSMo 1959, V.A. M.S. The information properly charges murder in the second degree and its amendment to change the offense charged from first degree murder to second degree merely reduced the offense charged to a lesser degree of the same crime and did not charge a new offense. The information is verified by the prosecuting attorney on his official oath. The prosecuting attorney must sign an information (Supreme Court Rule 24.01, V.A.M.R.) and the information need only have endorsed thereon the names of the witnesses (Supreme Court Rule 24.17, V.A.M.R.). They are not required to sign the information.

■ Finally, appellant's claim that he could have been charged with a capital offense only by an indictment, and not by an information, is obviously without merit.

Section 17, Article I, Constitution of Missouri, 1945, V.A.M.S. The requirement of the Fifth Amendment to the Constitution of the United States has no application to state procedure in this regard. Hurtado v. California, 110 U.S. 516, 534, 4 S.Ct. 111, 28 L.Ed. 232; State v. Cooper, Mo.Sup., 344 S.W.2d 72, 74(1–3).

The judgment is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.