**STATE of Missouri, Respondent,**

v.

**Charles Edward LEE, Donald Hunt, Richard Leo Carpenter, Donald Wayne Lee, Bill Powell, and Donald Ray Hayes, Appellants.**

No. 51639.

Supreme Court of Missouri, Division No. 1.

July 11, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, Ben J. Martin, Sp. Asst. Atty. Gen., Springfield, for respondent.

Powell, Jones & Ringer, Dexter, for appellants.

HOLMAN, Presiding Judge.

Each of the six defendants was found guilty of statutory rape and the punishment of each was fixed by the jury at two years' imprisonment in the penitentiary. See § 559.260 (all statutory references are to RSMo 1959, V.A.M.S.). All of them have appealed from the judgments entered.

The defendants, young men ranging in ages from 18 to 21 years, lived in the vicinity of Dudley, Missouri. The events here involved occurred in or near Dudley on August 27, 1964. The offenses charged were alleged to have occurred in a little white house located about one-half mile south of Dudley which the defendants referred to as their clubhouse. It was a one-room structure in which they had placed a couch which could be made into a bed, a table, and some chairs. The windows and doors had fallen from or had been removed from the building. The prosecuting witness, whom we will refer to as Becky, was barely 15 years old—the evidence indicating that she was born on July 30, 1949. She lived with her grandmother, Jennie Pearson, and her sister, Sharon, in the southeast section of Dudley.

Becky testified that on the evening in question she left home at 7:15 and started to walk to church; that there were no sidewalks and she was walking along the edge of the street; that when she reached a point near the Mallory residence a Chevrolet car driven by defendant Hayes stopped near her; that defendant Carpenter jumped out of the car, picked her up, and threw her into the seat; that Carpenter told her to "shut her mouth," and directed Hayes to "go straight and hit the blacktop and keep your lights turned off"; that Hayes drove the car to the little white house south of Dudley where they stopped; that Carpenter dragged her into the house and threw her onto the couch; that he then pulled off her underpants, held both of her hands, "put his privates in mine," and engaged in sexual intercourse; that when he got up he started for the door and she put her pants on and started to leave the room just behind him when Charles Lee came in the door; that Charles then threw her on the couch, pulled off her pants, "put his privates in mine" and engaged in sexual intercourse for a period of time; that when Charles got up and started towards the door his brother, Donald Lee, came in and started to take her back to the couch but she got away from him and ran out the door; that she then ran north up the road towards Dudley with all of the defendants chasing her; that Donald Hunt grabbed her and took her back to the driveway in front of the little white house. When he released her she again started running toward Dudley; that she left the road and cut across a bean field; that someone started the car and drove it down the

road shining a spotlight over the bean field; that she escaped and shortly thereafter arrived at her home; that no one was there so she locked the door, pulled down the blinds, and went to the bathroom and started washing herself.

Shortly after Becky arrived her sister, accompanied by her date, Wilson Peck (whom she married prior to trial), arrived at the house and upon being questioned by her sister Becky told her what had happened. Becky was then taken to the office of Dr. Northington in Dexter. The doctor testified that she was highly nervous and that he gave her a sedative; that he then took some secretion from her vagina which he delivered to Mr. Kenner, a laboratory technician; that Kenner prepared slides which he later examined and found that the fluid contained mobile male sperm. Similar testimony relating to the contents of the seminal fluid was given by Mr. Kenner.

All of the defendants testified. Defendant Hayes testified that he had spent the day in question working on Carpenter's car; that during that afternoon he had seen Becky and she indicated that she had something she wanted to tell him; that early in the evening he and Carpenter had driven to the home of the Lee brothers; that while there he saw Becky walking down the road; that he and Carpenter got in Carpenter's car (Hayes driving) and that when they overtook Becky, Carpenter got out of the car and Becky got into the car, seated between him and Carpenter, and they then drove to the clubhouse; that upon arriving there he and Becky got out of the car and went into the house and Carpenter drove away; that they sat on the couch and Becky then told him that one Sue Temples had said she wanted to date him. Hayes testified that he did not touch Becky and of course did not have intercourse with her; that shortly after they entered the house the Lee brothers, Bill Powell, and Donald Hunt arrived at the clubhouse and at that point Becky said she

had to leave and did so. About ten minutes later Carpenter returned and a short time thereafter they all got in Carpenter's car and drove into Dudley.

Carpenter's testimony was very similar to that of Hayes except, in addition, he stated that when he left the clubhouse he drove to the home of his mother-in-law a short distance away to see if his wife (from whom he was separated) was at home; that when he returned to the clubhouse Becky had gone. He denied having had intercourse with Becky.

The testimony of the other four defendants was substantially the same. They stated that they did not know that Hayes and Carpenter were taking Becky to the clubhouse; that after they had finished eating some sandwiches at the Lee home they walked to the clubhouse intending to sweep it out; that when they arrived Hayes and Becky were seated on the couch and that almost immediately Becky stated that she had to go home and got up and walked out. Each of these defendants denied having had intercourse with Becky or having chased her or touched her in any way. They stated that after Carpenter returned to the clubhouse they stood around and talked a few minutes and then all got in the car and drove into Dudley.

Additional testimony will be stated in our discussion of points briefed.

The first point briefed is that the trial court erred in overruling defendants' motion to quash the information which motion was based upon the fact that no indictment had been returned against defendants by a grand jury. It is said that such was required by the Fifth Amendment of the U. S. Constitution which provides, in part, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." Defendants concede that said amendment has generally been held to be a restriction on the federal government and not on the states, but they

say that the Fourteenth Amendment has recently been held to apply various restrictions, such as those contained in a number of the first ten amendments, to the states. For example, see Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L. Ed.2d 106.

In the case of Hurtado v. People of State of California, 110 U.S. 516, 4 S. Ct. 111, 28 L.Ed 232, it was expressly decided that the various provisions of the Federal Constitution did not require that the states prosecute capital or other infamous crimes by indictment rather than by information. We have also decided that issue in the same manner in State v. Waller, Mo.Sup., 382 S.W.2d 668 [4], and in State v. Cooper, Mo.Sup., 344 S.W.2d 72 [1–3]. Upon the authority of the cases cited in this paragraph we rule this contention adversely to defendants.

In 1963 the General Assembly enacted § 545.885 which provides, in part, as follows: "When two or more defendants are jointly charged with an offense under sections 559.260, 559.270 or 563.230, RSMo, they shall be tried jointly or separately in the discretion of the court; except that if there is evidence that would be admissible against one defendant, but inadmissible as to the defendants if all are tried jointly, the defendant against whom the evidence is admissible, upon timely motion made by any other defendant against whom the evidence is inadmissible, shall be tried separately." To like effect, see also S.Ct.Rule 25.07(b), V.A.M.R. In accord with the foregoing the defendants filed a joint motion seeking a separate trial for each one of them. They here complain of the alleged error of the court in overruling said motion.

In support of said contention defendants state that the provisions of the foregoing statute (and rule) constitute an arbitrary and unreasonable classification and hence are violative of the equal protection clause of the Federal Constitution (§ 1, Fourteenth Amendment) and of the somewhat similar provision of the Missouri Constitution, V.A.M.S. (§ 2, Art. I). Specifically, defendants say that it is a denial of equal protection to provide that persons charged with rape and sodomy should be entitled to a separate trial in the discretion of the court while those jointly charged with other felonies are entitled to a separate trial, as a matter of right, upon request. See § 545.-880, S.Ct.Rule 25.07(a).

It is suggested in both briefs that the enactment of the provision in question was an effort to avoid the necessity of prosecuting witnesses making multiple appearances in court in those cases. That would appear to be a sound reason for its adoption. Unquestionably, the trial of a rape or sodomy case is an ordeal to the prosecuting witness who undoubtedly is subjected to a great deal of emotional suffering and public embarrassment. If a prosecuting witness knows that she will be required to make many such appearances she may refuse to make a complaint or to otherwise cooperate with prosecuting officials and hence the guilty may escape prosecution.

The general principles involved are stated in 16 Am.Jur.2d, Constitutional Law, as follows: "One of the basic principles involved in considering the validity of legislation assailed under equality provisions of the federal and state constitutions is that in the exercise of its power to make classifications for the purpose of enacting laws over matters within its jurisdiction, the state is recognized as enjoying a wide range of discretion." § 495, p. 862. "A fundamental principle involved in classification is that it must meet the requirement that a law shall affect alike all persons in the same class and under similar conditions. If a classification in legislation meets the prerequisites indispensable to the establishment of a class that it be reasonable and not arbitrary, and be based upon substantial distinctions with a proper relation to the objects classified and the purposes sought to be achieved, as long as

the law operates alike on all members of the class, which includes all persons and property similarly situated, it is not subject to any objections that it is special or class legislation, and is not a violation of the federal guaranty of the equal protection of the laws." § 502, p. 878. See also State v. Howell, 317 Mo. 330, 296 S.W. 370 [4], State v. Scullin-Gallagher Iron & Steel Co., 268 Mo. 178, 186 S.W. 1007 [3], and McClellan v. Kansas City, Mo. Sup., 379 S.W.2d 500 [15-17].

In their brief defendants have cited Hill v. Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559, which relates to systematic discrimination against negroes in the selection of grand jurors, Patterson v. Medberry, 10th Cir., 290 F.2d 275, involving the refusal of the state to furnish an indigent defendant a free appeal transcript, and State ex rel. Miller v. O'Malley, 342 Mo. 641, 117 S.W.2d 319, which declared a statute unconstitutional because it contained different provisions applicable to persons under investigation for election frauds in cities than it did for those in rural areas. It is obvious that those cases are readily distinguishable from the case before us.

■ Defendants also call attention to the fact that the provision under review is not made applicable to certain other sex crimes such as incest, molesting a minor, assault with intent to rape, and offenses relating to prostitution. We do not think the statute violates the equal protection clauses because it is not made applicable to all offenses which relate in any manner to sex. As said in 16 Am.Jur.2d, supra, "[t]here is no constitutional requirement that regulation must reach every class to which it might be applied—that the legislature must regulate all or none. It is not unconstitutional merely because it is not all-embracing and does not include all the evils within its reach." § 505, p. 885. Furthermore, we conclude as a fact that the basic reason for the rule would not apply as forcibly to the crimes herein mentioned as it would to the crimes of rape and sodomy.

■ Since the statute (and rule) in question operates in the same manner as to all persons charged with rape and sodomy, and is reasonable and not arbitrary, we rule that it is valid and constitutional.

Defendants also contend that "the court erred in refusing to grant the defendants separate trials for the reason that some of the state's evidence would not have been admissible as to other defendants if the other defendants had been granted separate trials. There was no testimony that the defendants Donald Hunt, Donald Wayne Lee, Bill Powell, and Donald Ray Hayes had intercourse with the prosecuting witness or aided and abetted those two defendants in any way whatever." They seem to take the position that the four defendants mentioned should have been granted a separate trial because the evidence of the actual act of rape by Carpenter and Charles Lee would not have been admissible against them. We do not see any reason for deciding that point. If there was evidence that those defendants aided and abetted Carpenter and Charles Lee the evidence complained of was admissible against them and they were not entitled to a separate trial. If there was no such evidence those defendants were entitled to a judgment of acquittal and it therefore would be immaterial whether they were tried separately or together.

■ It is next contended that there was no evidence that defendants Hayes, Hunt, Powell, and Donald Lee aided and abetted the other defendants in their acts of intercourse and hence the court should have sustained each of their separate motions for a judgment of acquittal. Certain rules to be considered in connection with this contention are that in determining the sufficiency of the evidence to sustain a conviction, "the appellate court considers as true the evidence favorable to the state and the favorable inferences reasonably to be drawn

therefrom; and evidence to the contrary is rejected. * * * A person who aids and abets the commission of a criminal offense is guilty as a principal without a showing of conspiracy. * * * All persons who act together with a common intent and purpose in the commission of a crime are equally guilty even though they are not personally present at the commission of the offense." State v. Slade, Mo.Sup., 338 S.W.2d 802, 805, 806. We have also said that "evidence sufficient to justify the jury in finding that defendant did in any way aid, abet or encourage another in the commission of a crime is sufficient to support a conviction." State v. Ramsey, Mo.Sup., 368 S.W.2d 413, 417.

█ We have concluded that a submissible case was made against defendant Hayes. There was evidence that he was driving Carpenter's car, stopped it while Carpenter forcibly grabbed Becky and threw her into the car, apparently followed Carpenter's directions in driving to the clubhouse with the lights out (during which time Carpenter threatened to choke Becky if she yelled for help), and was present when Carpenter dragged Becky into the clubhouse. That was sufficient conduct from which a jury reasonably could have found that he aided and abetted Carpenter in accomplishing an act of intercourse with Becky.

█ It is our view, however, that the State failed to make a submissible case against defendants Hunt, Powell, and Donald Lee. There is no contention that any of those defendants did anything to assist or encourage Carpenter or Charles Lee in accomplishing acts of intercourse with Becky. Everything they did occurred after those acts of intercourse had been completed. Section 556.170 provides that "[e]very person who shall be a principal in the second degree in the commission of any felony, or who shall be an accessory to any murder or other felony before the fact, shall, upon conviction, be adjudged guilty of the offense in the same degree, and may be charged, tried, convicted and punished in the same manner, as the principal in the first degree." The conduct, after the crime has been committed, of one alleged to have been an accessory before the fact is often held to be admissible as tending to prove that he had a criminal intent in connection with the commission of the crime. State v. Corbin, Mo.Sup., 186 S.W.2d 469. However, if there is no showing that a defendant had any connection with the crime until after it has been committed, we do not think he can be found guilty as a principal in the second degree or accessory before the fact. The fact that these defendants chased Becky and attempted to restrain her from leaving the premises may have indicated that they entertained an expectation or desire to have intercourse with her thereafter. However, if they had that intent it was not accomplished and their conduct had nothing to do with the acts of statutory rape that had previously been completed. We rule that the court erred in failing to direct the entry of a judgment of acquittal as to said defendants and that the judgment of conviction, as to them, should be reversed.

█ It is also contended that the court should have sustained the motions for judgment of acquittal filed by defendants Carpenter and Charles Lee because Becky's testimony is said to have been contradictory and unconvincing. A number of cases have held that "in statutory rape particularly a prima facie case can be made on the uncorroborated testimony of the prosecutrix. State v. Thomas, 351 Mo. 804, 174 S.W. 2d 337. And in rape cases generally the rule is that corroborotion is not essential to prove the act of sexual intercourse unless the testimony of the prosecutrix is contradictory and in conflict with physical facts, surrounding circumstances, and common experience so as to be so unconvincing and improbable that it is extremely doubtful." State v. Wood, 355 Mo. 1008, 199 S.W.2d 396, 398. We rule this contention against said defendants. Becky's testimony contained some contradictions as to minor de-

tails but we do not find it unconvincing as to the essential facts concerning acts of intercourse with Carpenter and Charles Lee. Moreover, her testimony in that regard was corroborated to some extent by the fact that mobile male sperm were found in her vaginal secretions shortly thereafter.

In the cross-examination of defendant Carpenter it developed that he had previously served in the armed forces of the United States. He testified without objection that he had been convicted by a military court-martial of misuse of a government vehicle. Thereafter he was asked if he had been convicted at any other court-martials and, over objection, testified that he had been convicted of dereliction of duty. Defendants here contend that the admission of that evidence was error.

 Section 491.050 provides that "[a]ny person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer." In the recent case of State v. Himmelmann, Mo.Sup., 399 S.W.2d 58, we held that evidence of defendant's court-martial conviction for murder was properly admitted to impeach the defendant. We arrived at that conclusion because murder is an offense involving moral turpitude and is an offense under the laws of this state as well as under military law. We have concluded, however, that evidence of a court-martial conviction for dereliction of duty is not admissible for the purpose of impeaching a defendant. This for the reason that there is no comparable offense which is a "crime" under the laws of this state and it is not an offense, at least in peacetime, which involves moral turpitude.

[15] It is our view, however, that the admission of that evidence, under the facts and circumstances of this case, would not constitute reversible error. The very reason we have held it inadmissible tends to support that conclusion. "Dereliction" has been defined as "intentional or conscious neglect." Webster's Third New International Dictionary. It is obvious that the offense in question is of a very indefinite nature and is one that would not be regarded by the jury as a serious infraction. It may be that in this instance the neglect of duty involved was merely a failure to report for K.P. duty on one occasion, or some similar omission. Morever, if the jurors were inclined to reject this defendant's testimony because of minor court-martial convictions we think it should be noted that there was a previous one admitted without objection. We cannot believe that the showing of one additional offense of an indefinite and obviously minor nature would have been prejudicial.

 Defendants also contend that the court erred in failing to grant a mistrial when counsel for the State examined Carpenter in the following manner: "Q (by Mr. Parsons) How long were you in the Army, Mr. Carpenter? A Eighteen months. Q Where were you discharged? A Fort Hood, Texas. Q And did you tell us that you had an honorable discharge? Mr. Powell: Wait a minute. I object to that, one objection has been sustained to that question. The Court: Sustained. Mr. Powell: Now, I ask that the jury be discharged because of this continuing harassing questions he's asked this defendant. The Court: Well, the motion to discharge the jury is denied." It is true that at a previous point in his testimony said defendant had been asked what kind of discharge he had received and the court had sustained an objection. While there no doubt have been exceptions, it is a well-settled general rule that the error in asking a witness an improper question is not prejudicial where the witness does not answer the question. State v. Hannebrink, 329 Mo. 254, 44 S.W.2d 142 [8]; State v. Keller, Mo. Sup., 281 S.W. 960 [11]. In the instant

case the last of the foregoing questions would appear to have been improper but the court promptly sustained an objection and it was not answered. Moreover, the question was not phrased in such a manner as to leave the inference that Carpenter had received a dishonorable discharge. We also note that immediately before the quoted questions were asked the court, in ruling on another objection, gave the jury the following admonition, "the jury understands that any question not answered is not evidence and should be disregarded." In the circumstances presented we rule that the trial court did not abuse its discretion in denying the motion to discharge the jury.

■ The next contention of defendants is stated in the brief as follows: "In view of the fact that Dr. Northington, the state's witness, testified that on the night of the alleged offense he examined the prosecuting witness and found male sperm in her private parts that could have been there for as much as five days, the court erred in refusing to permit the attorneys for the defendants to question the prosecuting witness and prove by her that she had had intercourse with one David Tipton in July, the month before the date of the alleged offense, * * * and to prove by her that on the night before the date of the alleged offense she had been out on a date with one Clifton Temples." We rule that contention adversely to defendants. The proffered testimony relating to an act of intercourse with David Tipton in July would not have been admissible for any purpose. State v. Taylor, 320 Mo. 417, 8 S.W. 2d 29 [2]. Also, the fact that Becky may have had a date with Clifton Temples on the night before the alleged offense would not tend to prove an act of intercourse with him and thus account for the male sperm. Such testimony, without additional proof of actual intercourse, would have been immaterial and clearly inadmissible.

■ Over the objection of defendants, Becky was permitted to testify that

shortly after she returned home her sister questioned her and she told her what had happened. She was not allowed to testify as to the details but merely that she had told her sister what had occurred. Defendants here contend that the court erred in admitting that testimony because it was not spontaneous and voluntary. In rape cases it is not necessary that statements of that kind be shown to have been spontaneous in order to be admissible. Also, we think the fact that Becky told her sister what occurred, in response to a question, does not indicate that the statement was not voluntary. We accordingly rule that the testimony here complained of was properly admitted. State v. Richardson, 349 Mo. 1103, 163 S.W.2d 956 [7, 8]; State v. Burgess, 259 Mo. 383, 168 S.W. 740; State v. Conrad, 322 Mo. 246, 14 S.W.2d 608 [4, 5]; State v. Robinson, Mo.Sup., 106 S.W.2d 425 [4].

■ Instruction No. 10 reads as follows: "The court instructs the jury that if the said Rebecca Wells was under 16 years of age, then it is immaterial whether she consented to such sexual intercourse or not, as such consent would be no defense to this charge." Defendants contend that said instruction is erroneous because it assumes that some of them had intercourse with Becky. Considered alone, the instruction might be subject to that criticism. However, separately numbered instructions are all parts of a single charge and must be considered as a whole. Instruction No. 8 required a specific finding of sexual intercourse. We also note that No. 10 contains the words, "such sexual intercourse." That phrase obviously refers to the acts of "sexual intercourse" hypothesized and submitted in No. 8. We rule that the giving of Instruction No. 10 did not constitute prejudicial error. State v. Smith, Mo.Sup., 237 S.W. 482 [12]; State v. Chesser, Mo.Sup., 293 S.W.2d 935 [8–10].

■ Instruction No. 8 hypothesized facts and submitted the issues of guilt as to Carpenter and Charles Lee in the first

paragraph and submitted the issues as to the other defendants in the second paragraph. Carpenter and Charles Lee here contend that the instruction was erroneous because the paragraph submitting the issues as to them did not end with a converse clause such as "and unless you so find you shall acquit said defendants." The second paragraph did end with such a clause but it is not clear that the jury would understand that it applied to the submission in each paragraph. We note also that somewhat similar directions are contained in other instructions. We rule that the omission complained of was not reversible error. In discussing a similar contention we have said that "[t]he instruction required the jury to find the facts set out beyond a reasonable doubt before authorizing a verdict of guilty. This was sufficient. If defendant wished the court to give a converse instruction, it was his duty to prepare one and request that it be given." State v. Rack, Mo.Sup., 318 S.W.2d 211, 215.

■ Becky testified that she was 15 years old at the time in question. Her birth certificate showing that she was born on July 30, 1949, was admitted in evidence. There was no evidence to the contrary. In the argument of one of the attorneys for defendant the following occurred: "Mr. Powell: Rebecca Wells is a well-developed, good-sized girl for her age. She weighs 127 pounds I believe she said. She's as big as any one of these boys that testified here on the witness stand today. And she said a lot of people took her for and thought she was older than that. They do have a birth record here [showing that] she was that age, and she says she was. Her grandmother is evidently here in the courtroom, and she didn't testify to that—Mr. McGhee: I object to that, Mr. Powell has the same right to subpoena as we do. Mr. Powell: We wouldn't have the same right to her grandmother as they would. The Court: Objection sustained; either side could have called the grandmother if they wanted to." Defendants contend that the court

erred in sustaining the foregoing objection. We have decided that we need not determine that point. Even if we assume that the ruling was erroneous we do not consider that it was prejudicial. In view of the unquestioned proof of Becky's age, no reasonable adverse inference could have been drawn from the fact that the state failed to call her grandmother to further buttress that proof. In the situation presented we rule that no reversible error occurred.

■ Defendants next complain of the refusal of the court to give their proffered instruction 6–D which contained the following clause which was not included in the credibility instruction given: "* * * if you believe that any witness has willfully sworn falsely to any material fact in issue in this case, then you are privileged to disregard or reject all or any part of such witness's testimony." In their argument defendants say that they "recognize that in the cases cited under this point and in many other cases, it is held that whether or not an instruction on the credibility of witnesses including the doctrine of 'falsus in uno, falsus in omnibus' should be given lies within the discretion of the court. But since the testimony of the prosecuting witness and the defendants is so contradictory and much of the testimony of the prosecuting witness is clearly unworthy of belief, we submit that the court abused its discretion in refusing to give Instruction No. 6–D." While there was, of course, a conflict between the testimony of the prosecuting witness and defendants we see nothing in the transcript which indicates that the court abused its discretion in refusing said instruction. We rule that contention against defendants.

Defendants' final point is that the court erred in permitting testimony by the prosecuting witness as to the conduct of the other defendants after the act of intercourse by Carpenter. Apparently their theory is that her testimony as to Carpenter's conduct prima facie established the offense of rape and that any testimony as to

subsequent conduct of the other defendants did not relate to that offense but tended to prove another offense and was prejudicial to them. They rely on cases such as State v. Amende, 338 Mo. 717, 92 S.W.2d 106, which hold that in statutory rape cases evidence of subsequent acts of intercourse between the defendant and the prosecuting witness (after proof of the rape charged) is inadmissible. We do not think those cases are applicable in the situation before us.

■ In the instant case each of the defendants are charged with the offense as a principal. Becky testified that as Carpenter was dragging her into the clubhouse Charles Lee came out of the house. Apparently he waited at the door until Carpenter completed his act of intercourse and then entered the house as Carpenter was leaving and committed a similar act. These acts occurred in rapid succession and were a part of the same occurrence or transaction. The subsequent act was admissible as a part of the res gestae. State v. Sykes, 191 Mo. 62, 89 S.W. 851 [10, 11]. Also, as stated, both of those defendants were charged as principals with rape and the evidence of the acts of both tended to establish that charge. The case as to them was submitted to the jury by an instruction (concerning which no complaint in that regard is made upon this appeal) which required a finding that both of them had sexual intercourse with Becky. Under the circumstances here presented we rule that the court did not commit reversible error in permitting testimony by Becky as to the acts of both Carpenter and Charles Lee.

■ Evidence as to the acts and conduct of the other defendants occurring after Carpenter and Charles Lee are said to have raped Becky was admissible as bearing on the charge that they aided and abetted in the commission of the offense. State v Corbin, supra. The fact that the State failed to make a submissible case as to some of those defendants would not indicate that the evidence was inadmissible. In that respect the State simply failed to offer a sufficient quantum of evidence to make such a case.

■ In our examination of the record as required by S.Ct. Rule 28.02, V.A.M.R., we note one matter which we deem advisable to discuss. The submission to the jury was for statutory rape. Each of the verdicts recited that the jury found the named defendant guilty of rape as charged in the information. The information contained all of the allegations essential to a charge of statutory rape. However, it also alleges that the rape was accomplished forcibly and against Becky's will. In examining the cases we find that those unnecessary allegations should be disregarded as surplusage. State v. Long, 341 Mo. 766, 108 S.W.2d 388 [5]; State v. Burks, Mo. Sup., 257 S.W.2d 919 [8, 9]. We accordingly conclude that the information is sufficient and the verdicts are in proper form and are responsive to the issues charged and submitted.

The judgment should be affirmed as to defendants Charles Edward Lee, Richard Leo Carpenter, and Donald Ray Hayes, and reversed as to defendants Donald Hunt, Donald Wayne Lee, and Bill Powell.

It is so ordered.

HENLEY, J., and STORCKMAN, Alt. J., concur.

HYDE, J., not sitting.